IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUTH MOUNTAIN CREAMERY, LLC, | : | No. 1:18-cv-00738 |
| Plaintiff, | : | |
| vs. | : | (Kane, J.) |
| U.S. FOOD AND DRUG ADMINISTRATION, et al., | : | Filed Electronically |
| Defendants. | : | |

**REPLY BRIEF IN SUPPORT OF THE**
**FEDERAL DEFENDANTS' SECOND MOTION TO DISMISS**

# Table of Contents

Introduction ........................................................................................................1
Argument..............................................................................................................2
I. This motion properly presents a factual attack under Rule 12(b)(1). .............2
II. SMC's desire to continue litigating does not confer justiciability. ..................5
A. SMC cannot manufacture adversity in the face of FDA's repeated written disclaimers of intent to take enforcement action. ....................................5
1. SMC's discussions with FDA more than 15 years ago are insufficient to presently show a substantial and immediate threat of harm. .............6
2. SMC's fear of prosecution under the FDCA is wholly speculative. ......8
3. Case law confirms that FDA's repeated written statements of non-enforcement render this action non-justiciable ..................................11
B. SMC's failure to respond to FDA's proposed labels means further factual development is necessary. ..........................................................14
C. A judgment now has no utility because no one is currently forcing SMC to use an objectionable label. ............................................................16
III. Even if this suit is not entirely non-justiciable, SMC cannot otherwise retain FDA by misreading the federal regulatory regime.......................................18
A. FDA does not grant or deny permits to distribute milk................................18
B. SMC may currently receive the relief it seeks—and sell its non-fortified non-fat milk in Pennsylvania—without any further involvement by this Court or FDA. ..........................................................................................19
Conclusion .........................................................................................................21

## Table of Citations

### Cases

*Bartley v. Taylor*,
25 F. Supp. 3d 521 (M.D. Pa. 2014) ....................................................................5

*Behar v. Pa. Dep't of Transp.*,
791 F. Supp. 2d 383 (M.D. Pa. 2011) ................................................................10

*Bridge v. U.S. Parole Comm'n*,
981 F.2d 97 (3d Cir. 1992) ..................................................................................8

*CNA v. United States*,
535 F.3d 132 (3d Cir. 2008) ...........................................................................2, 4

*Cooksey v. Futrell*,
721 F.3d 226 (4th Cir. 2013) ...............................................................................17

*Davis v. Wells Fargo*,
824 F.3d 333 (3d Cir. 2016) ..................................................................................4

*Fla. Lime & Avocado Growers v. Paul*,
373 U.S. 132 (1963) ............................................................................................20

*Heasley v. Belden & Blake Corp.*,
2 F.3d 1249 (3d Cir. 1993) ..................................................................................21

*Heckler v. Chaney*,
470 U.S. 821 (1985) ...........................................................................................8, 9

*Holk v. Snapple Beverage Corp.*,
575 F.3d 329 (3d Cir. 2009) ................................................................................18

*Jamal v. Kane*,
96 F. Supp. 3d 447 (M.D. Pa. 2015) ........................................................... 12, 13

*Laird v. Tatum*,
408 U.S. 1 (1972) .......... 5, 8, 18

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) .......... 4

*Nemphos v. Nestle Waters N. Am., Inc.*,
775 F.3d 616 (4th Cir. 2015) .......... 20

*Ocheesee Creamery LLC v. Putnam*,
851 F.3d 1228 (11th Cir. 2017) .......... 7, 15

*Peachlum v. City of York*,
333 F.3d 429 (3d Cir. 2003) .......... 12

*Plains All Am. Pipeline L.P. v. Cook*,
866 F.3d 534 (3d Cir. 2017) .......... passim

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014) .......... 19

*Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*,
40 F.3d 1454 (3d Cir. 1994) .......... 12, 13, 14

*Printz v. United States*,
521 U.S. 898 (1997) .......... 20

*Salvation Army v. Dep't of Cmty. Affairs*,
919 F.2d 183 (3d Cir. 1990) .......... 10, 12, 13, 17

*Shaffer v. GTE North, Inc.*,
284 F.3d 500 (3d Cir. 2002) .......... 20

*Step-Saver Data Systems, Inc. v. Wyse,*
*Tech.*, 912 F.2d 643 (3d Cir. 1990) .......... 5

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 11

*United Pub. Workers of Am. v. Mitchell*,
330 U.S. 75 (1947) ....................................................................................10

**Statutes**

21 U.S.C. § 333 ............................................................................................8
21 U.S.C. § 336 ............................................................................................8
21 U.S.C. § 393(b)(2)(A) ...............................................................................18
21 U.S.C. § 337(a) .........................................................................................9
3 Pa. Cons. Stat. § 5721 ................................................................................21
3 Pa. Cons. Stat. § 5733(f) ……………………………………………………..21

**Regulations**

21 C.F.R. § 130.10(b) .............................................................. 3, 4, 9, 13
7 Pa. Code § 59a.12 ......................................................................................21
7 Pa. Code § 59a.14 ......................................................................................21

**Rules**

Fed. R. Civ. P. 19(a)(1)(A) ........................................................ 18, 19, 20

## **Introduction**

This motion turns on a simple question: whether South Mountain Creamery, LLC ("SMC") faces an objectively credible threat of enforcement by the U.S. Food and Drug Administration ("FDA") if it sells in Pennsylvania non-fortified non-fat milk labeled as "skim milk," but not labeled as "imitation." As set forth in its letter to SMC, its sworn declarations, and its representations to this Court, FDA has no intention of taking the enforcement action SMC claims to fear. Thus, there is no justiciable dispute between the parties.

SMC persists with this lawsuit because it purportedly lacks a "binding promise" from FDA. But SMC's insistence upon a "binding promise" ignores FDA's repeated statements of non-enforcement and lacks grounding in case law.

SMC's speculation about a surprise, future criminal prosecution is both implausible and unreasonable when FDA has never threatened SMC with prosecution. Moreover, FDA informed SMC in writing and through sworn declarations that the agency has no intention of requiring SMC to fortify its non-fat milk with vitamins A or D or to label it as "imitation." FDA further declared that it has no plan to change this position or to refer an enforcement action to the Department of Justice.

SMC's subjective desire to continue this litigation cannot substitute for the objectively credible threat of enforcement necessary to establish jurisdiction. This case should be dismissed.

## <u>Argument</u>

### I. This motion properly presents a factual attack under Rule 12(b)(1).

SMC wrongly questions whether this motion raises a Rule 12(b)(1) factual attack. *See* SMC Opp'n, ECF No. 43, at 10-11. This Court previously discerned that FDA's first motion to dismiss attempted to raise a "factual attack on Plaintiff's complaint." March 31, 2019 Op., ECF No. 35, at 11 ("Mem. Op."). Nevertheless, because FDA's declarations were "filed after Plaintiff filed its brief in opposition to the motion to dismiss," the Court was constrained to review FDA's first motion as a facial attack. *Id.* 12. FDA has cured that issue here.

A factual attack under Rule 12(b)(1) "concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (quotations omitted). Contrary to SMC's characterization that FDA's declaration "corroborates" SMC's allegations, SMC Opp'n 10, the table below illustrates how FDA introduced numerous facts belying justiciability.

| SMC Complaint | FDA Submission |
|---|---|
| FDA "does object" to SMC selling milk labeled as "skim milk" without adding vitamins A and D (Compl., ECF No. 1, ¶¶ 28, 124);<br><br>"Any additional efforts to contact the FDA to attempt to resolve these issues would be futile" (¶ 101) | "If SMC had engaged with FDA, as suggested by the Pennsylvania Department of Agriculture," SMC would have learned that "FDA *does not object* to the distribution of non-fat, or skim, milk without added vitamins A or D based on the absence of those vitamins if the product is labeled to notify consumers that the product does not contain vitamins A and D" (Mayne Decl., ECF No. 37-2, ¶ 15) |
| "any product consisting entirely of skim milk must be labeled as 'imitation'" (¶ 61; *see id.* ¶¶ 109, 126, 139) | "FDA *does not intend to take any action to require* non-fat, or skim, milk without added vitamins A or D to be labeled as "imitation" based on the absence of added vitamins" (Mayne Decl. ¶ 15) |
| Vitamins A and D must be added back into skim milk (¶¶ 15, 109) | "FDA *does not intend . . . to require* such non-fat, or skim, milk to comply with 21 C.F.R. § 130.10(b) with respect to fortification with vitamins A and D" (Mayne Decl. ¶ 15) |
| "The Creamery would happily use any reasonable label that allows it to honestly and clearly describe its pure skim milk without being forced to mislead or confuse its customers." (¶ 63);<br><br>"If the Creamery were allowed to use an honest, nonmisleading label . . . then it would do so." (¶ 110) | FDA has suggested non-exclusive labeling options, including "Skim milk, 0% DV vitamins A&D", that honestly and clearly describe the proposed product (Mayne Decl. ¶ 13; Mayne Letter, ECF No. 37-3, at 1) |
| SMC faces "substantial fines . . . and numerous other problems, including the possible forced closure of the entire Creamery," "incarceration of up to one year per offense for the Creamery's | FDA "does not intend to take any action to require non-fat or skim milk without added vitamins A or D to be labeled as 'imitation' based on the absence of added vitamins or to require |

| | |
|---|---|
| owners," "seizure and condemnation of skim milk being shipped across state lines" (¶¶ 87-89)<br><br>"FDA procedures are inadequate to prevent this irreparable injury" (¶ 100) | [it] to comply with 21 C.F.R. § 130.10(b) with respect to fortification with vitamins A and D." (Mayne Decl. ¶ 13; Mayne Letter 1)<br><br>FDA has "no intention of initiating or supporting a referral of any enforcement action (civil or criminal) to the U.S. Department of Justice for conduct that is consistent with my July 10, 2018 letter" (Mayne Decl. ¶ 16) |

FDA introduced facts challenging SMC's standing and the case's ripeness—in other words, "the existence of subject matter jurisdiction." *CNA*, 535 F.3d at 145. Accordingly, not only does SMC bear the burden of proving jurisdiction exists, but "no presumptive truthfulness attaches to [its] allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). SMC cannot meet this burden.[1]

[1] SMC also mischaracterizes FDA's motion as challenging whether SMC "has got the right defendant." SMC Opp'n 11 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016)). FDA actually contests whether SMC is "the right person to bring this claim," *Davis*, 824 F.3d at 348, and whether any claim is premature.

## II. SMC's desire to continue litigating does not confer justiciability.

The *Step-Saver* factors frame this Court's justiciability analysis. *See* Mem. Op. 12 & n.8. Under the *Step-Saver* test, a court considers (1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment. *Step-Saver Data Systems, Inc. v. Wyse Tech.*, 912 F.2d 643, 647-50 (3d Cir. 1990). All three factors support FDA's position that SMC lacks standing and its claims are not ripe.

### A. SMC cannot manufacture adversity in the face of FDA's repeated written disclaimers of intent to take enforcement action.

"In the context of a pre-enforcement challenge, for parties' interests to be adverse, there must be a 'substantial threat of real harm' and the threat must 'remain real and immediate throughout the course of the litigation.'" Mem. Op. 13 (quoting *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 541 (3d Cir. 2017)). SMC also must show that any alleged "chilling effect" is objectively reasonable, viewed in light of "a similarly situated person of 'ordinary firmness'" and "in light of the circumstances presented in the particular case." *Bartley v. Taylor*, 25 F. Supp. 3d 521, 530 (M.D. Pa. 2014); *see, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). To manufacture adversity, SMC conjures a chimerical threat of criminal prosecution

through which SMC's "owners' lives and their business could all be destroyed at a moment's notice." SMC Opp'n 7, 12. This alleged threat is purely speculative and objectively unreasonable.

**1. SMC's discussions with FDA more than 15 years ago are insufficient to presently show a substantial and immediate threat of harm.**

The only specific evidence SMC offers to support its fear of suffering criminal prosecution is an exchange with FDA more than 15 years ago. *See* SMC Opp'n 3-5. These stale interactions, however, do not demonstrate that SMC currently faces a "real and immediate" threat of prosecution for several reasons. *Plains*, 866 F.3d at 541.

*First*, SMC does not allege that FDA ever threatened it with *prosecution* or other enforcement action during any of these interactions—either in FDA's November 2001 letter responding to an inquiry from SMC or during the December 2002 meeting. *Compare* Mayne Decl. ¶ 10(a), 10(c), *with* ECF Nos. 43-2 and 43-3; *see also* ECF No. 31-2, at 6-7 (November 2001 letter). That is consistent with FDA's conclusion, after a search of its records, that the agency "did 'not identify a single instance where FDA sought to take enforcement action against any entity for misbranding food based on the distribution of non-fat or skim milk to which vitamins A or D had not been added.'" Mayne Decl. ¶ 13 (quoting Mayne Letter).

*Second*, even if they were otherwise relevant, any alleged representations by FDA employees nearly two decades ago have been superseded by more recent statements from Dr. Mayne, a member of FDA's leadership. Dr. Mayne is the head of FDA's Center for Food Safety and Applied Nutrition, which administers the provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA") relating to human food. *See id.* ¶¶ 1, 5-6. Dr. Mayne ultimately oversees, for example, the office in which the author of the FDA's November 2001 letter worked. *Compare id.*, *with* ECF No. 31-2, at 7. Accordingly, Dr. Mayne's current written representations are the agency's operative position.

*Third*, the process leading to FDA's current position underscores the irrelevance of old statements. The agency's non-enforcement position considered relevant case law developments, including *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228 (11th Cir. 2017), which involved a First Amendment challenge to a state law prohibiting a creamery from using the words "skim milk" to describe its non-fortified non-fat milk. *See* Mayne Decl. ¶ 12. It also followed from a series of internal discussions within relevant FDA offices. *See id.* ¶ 14. That deliberative process allowed FDA to state that it has no plan to change its position. *See id.* ¶ 17. Apart from its speculation, SMC provides no basis to doubt FDA's

representation. *See Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 106 (3d Cir. 1992) ("Government officials are presumed to act in good faith.").

### 2. SMC's fear of prosecution under the FDCA is wholly speculative.

SMC claims that the FDCA's "plain language mandates enforcement against" SMC, specifically 21 U.S.C. § 333. SMC Opp'n 13; *see id.* 20 ("That same law also orders the FDA to enforce it" and citing 21 U.S.C. § 333).[2] The Supreme Court has held otherwise.

In *Heckler v. Chaney*, 470 U.S. 821 (1985), the Court rejected the argument that the FDCA "mandates criminal prosecution of every violator of the Act." *Id.* at 835. Indeed, the Secretary of Health and Human Services is not required "to report for prosecution, or for the institution of libel or injunction proceedings, minor violations of" the FDCA if the Secretary "believes that the public interest will be adequately served by a suitable written notice or ruling." 21 U.S.C. § 336. Moreover, the Court recognized that the Secretary is "charge[d] . . . only with recommending prosecution," and in this role, the Secretary enjoys "complete

---

[2] SMC contends that its description of the FDCA and FDA regulations is "undisputed by the FDA." SMC Opp'n 2. In fact, FDA did not concede that SMC's interpretation of the FDCA is correct. Instead, FDA noted in its opening brief that it was unnecessary to address SMC's "extensive discussion of its interpretation" of the statute and regulations "for purposes of this motion." ECF No. 38, at 4 n.3.

discretion . . . to decide how and when [such authority] should be exercised." *Heckler*, 470 U.S. at 835. Further, even if the Secretary were to recommend prosecution, the Attorney General still must exercise his discretion to institute the proceeding. *See id.*; *see also* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement . . . of this chapter shall be by and in the name of the United States.").

Here, once alerted to this suit, FDA promptly and voluntarily attempted to alleviate SMC's concerns about enforcement.[3] FDA wrote to SMC and reaffirmed through a sworn declaration that it "does not intend to take any action to require non-fat or skim milk without added vitamins A or D to be labeled as 'imitation' based on the absence of added vitamins or to require such non-fat or skim milk to comply with 21 C.F.R. § 130.10(b) with respect to fortification with vitamins A and D." Mayne Decl. ¶ 13; Mayne Letter 1. FDA further "ha[s] no intention of initiating or supporting a referral of any enforcement action (civil or criminal) to the U.S. Department of Justice for conduct that is consistent with my July 10, 2018

[3] FDA's public representations of non-enforcement belie SMC's suggestion that settlement discussions stalled because FDA sought to retain the ability to pursue a surprise prosecution of SMC, *see* SMC Opp'n 13—as SMC well knows.

letter." Mayne Decl. ¶ 16; *see id.* ¶ 17 (FDA "has no plan to change the position set forth in the July 10, 2018 letter.").[4]

Against FDA's written disclaimer, SMC only speculates about facing prosecution. *See, e.g.*, SMC Opp'n 7 ("*If* and when either the FDA or Pennsylvania decides to prosecute the Creamery's owners . . . .") (emphasis added). But "a realistic assessment of the likelihood of such action is a necessary part of the threshold inquiry concerning justiciability." *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir. 1990).

The existence of regulations that SMC claims *could* at some future date be applied in an allegedly unconstitutional manner by itself is not sufficient. *See United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 91 (1947) (concluding plaintiffs lacked standing when "[n]o threat of interference by the [government agency] with the rights of these appellants appears beyond that implied by the existence of the law and the regulations"); *Behar v. Pa. Dep't of Transp.*, 791

---

[4] Even if FDA were to contemplate taking enforcement action against SMC (which it is *not*), the company's depiction of prosecution "with no notice" is unfounded. SMC Opp'n 12. FDA's Regulatory Procedures Manual generally provides that, absent a danger to health or intentional violations, FDA endeavors to give firms an opportunity to voluntarily take corrective action before initiating enforcement action. *Id.* § 10-2-3 & 10-2-4, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/compliance-manuals/regulatory-procedures-manual. To this end, FDA typically issues warning letters before taking any enforcement action. *Id.* § 4-4-1.

F. Supp. 2d 383, 390 (M.D. Pa. 2011) (rejecting argument that a state "reporting fact sheet that states 'providers who do not comply with their legal requirement to report may be convicted of a summary criminal offense'" created a credible threat of prosecution). Given FDA's statements of non-enforcement, SMC's speculation cannot establish "circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

### 3. Case law confirms that FDA's repeated written statements of non-enforcement render this action non-justiciable

FDA told SMC *four* times in writing since this action began that it has no intention of taking the action the company claims to fear—*i.e.*, that FDA would require SMC to fortify its non-fat milk with vitamins A or D or to label the product "imitation" skim milk. *Compare* Mem. Op. 13 (describing SMC's allegations), *with* Mayne Decl. ¶ 13 (April 2019 declaration); ECF No. 31-1, at ¶ 4 (October 2018 declaration); ECF No. 28-1, at ¶ 11 (August 2018 declaration); Mayne Letter 1 (July 2018 statement). Nonetheless, SMC purportedly persists with this lawsuit because "FDA and Pennsylvania refuse to make *binding* promises to [SMC] that they will not enforce the challenged laws." SMC Opp'n 12 (emphasis added). SMC's demand is inconsistent with the law and ignores the form and substance of FDA's representations.

SMC quotes this Court's reference to language from *Peachlum v. City of York*, 333 F.3d 429, 437 (3d Cir. 2003), about "the absence of a promise not to prosecute." *See* SMC Opp'n 12 (quoting Mem. Op. 13). But SMC adds the modifier "binding" to the *Peachlum* quote. SMC Opp'n 12 & *passim*. Subtracting SMC's addition and contrary to SMC's belief about "inapplicable precedent," *see* SMC Opp'n 13, FDA's representations fit squarely within the case law in both form and substance.

As to form, courts have accepted statements of non-enforcement contained in both sworn and unsworn documents. *See, e.g., Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1470-71 (3d Cir. 1994) (accepting state official's affidavit that the state "has no intention to prosecute essentially exempt churches" for engaging in certain activity); *Salvation Army*, 919 F.2d at 191-92 (relying on agency representations of non-enforcement in an informal "booklet" to hold claims not justiciable); *Jamal v. Kane*, 96 F. Supp. 3d 447, 454-55 (M.D. Pa. 2015) (relying on representations of non-enforcement by district attorney in a brief). Here, FDA's written representations include a letter and several sworn declarations by the relevant, high-ranking agency official.

As to substance, FDA's representations cover precisely the conduct in which SMC seeks to engage. This Court recognized that SMC "wishes to label its

additive-free skim milk in an 'honest, non[-]misleading" manner and not be required to label its product as 'imitation.'" Mem. Op. 13 (quoting Compl. ¶¶ 18, 61-63). FDA has stated that "[t]he agency *does not intend to take any action to require* non-fat or skim milk without added vitamins A or D to be labeled as 'imitation' based on the absence of added vitamins *or to require* such non-fat or skim milk to comply with 21 C.F.R. § 130.10(b) with respect to fortification with vitamins A and D." Mayne Decl. ¶ 13. The agency additionally assured that it "has no plan to change the position." *Id.* ¶ 17.[5] Viewed objectively, the agency's representations negate any credible threat of enforcement. *See Presbytery of N.J.*, 40 F.3d at 1470-71 (holding state's representation that it "has no intention to prosecute essentially exempt churches" for engaging in certain activity to "clearly show that the claims of the [churches] are not ripe"); *Salvation Army*, 919 F.2d at 193 (holding that there was "no justiciable controversy" because "the current record reflects not only the absence of a threat of enforcement but an express assurance that there will be no enforcement against TSA of the waived provisions of the statute").

[5] Further amplifying their effect, FDA's non-enforcement representations extend beyond SMC to any other "entity that wishes to distribute non-fat, or skim, milk that is not fortified with Vitamins A and D." *Id.*

**B. SMC's failure to respond to FDA's proposed labels means further factual development is necessary.**

At the second *Step-Saver* factor, the Court must avoid "an opinion advising what the law would be upon a hypothetical set of facts." *Plains*, 866 F.3d at 543 (quoting *Presbytery*, 40 F.3d at 1463). As a consequence of SMC's litigation strategy, the facts about acceptable labels have not crystallized.

SMC admits it "would happily use any reasonable label that allows it to honestly and clearly describe its pure skim milk." Compl. ¶ 63. Although SMC did not accept Pennsylvania's invitation to develop labeling language with FDA *before* filing suit, FDA nonetheless volunteered labeling options *after* being sued. *See* Mayne Letter 1. FDA's succinct, truthful proposals, including "Skim milk, 0% DV vitamins A&D," are acceptable to Pennsylvania. *See* ECF No. 37-4. If SMC applied for a permit from Pennsylvania today to sell non-fortified non-fat milk using the proposed language, no labeling dispute would bar SMC from receiving the permit. And FDA would have made the same proposal if approached by SMC back in December 2017. *See* Mayne Decl. ¶ 15.

SMC has not objected to FDA's proposed labeling language or availed itself of FDA's offer to "discuss[] other labeling options with SMC . . . if necessary." Mayne Letter 1. Although SMC now denies that FDA's proposals are even that, *see* SMC Opp'n 14, it has been reported that at least "[o]ne of the label options,

'Skim milk, 0% DV vitamins A&D,' is *particularly appealing*" to SMC. *See* Philip Gruber, *FDA's Skim Label Offer Not Good Enough*, Lancaster Farming (July 20, 2018), https://www.lancasterfarming.com/farming/dairy/fda-s-skim-label-offer-not-good-enough/article_ebeb5ba2-9d94-5c5c-a868-cfdc9456861f.html (emphasis added). The inescapable truth is that the options FDA offered surely are proposals and that they are "reasonable label[s] that allow[] [SMC] to honestly and clearly describe its pure skim milk." Compl. ¶ 63.

The contrast between the plaintiff's actions in *Ocheesee* and SMC's in this case illustrates why an opinion now would rely on a hypothetical scenario. Unlike the state agency in *Ocheesee*, which issued "two stop sale orders" to the creamery, *see* 851 F.3d at 1232, FDA has not threatened or taken any enforcement action against SMC. Unlike the two years of back-and-forth with labeling proposals between the state and the creamery in *Ocheesee*, *see id.*, SMC did *not* "engage[] in substantial negotiations" with FDA before filing suit. *See* SMC Opp'n 14. Indeed, SMC declined to contact FDA (as Pennsylvania had suggested, *see* Compl. Ex. A), and has not claimed that FDA's proposed labeling language is substantively unacceptable. And unlike the state's refusal in *Ocheesee* to agree to a label that included the term "skim milk," *see id.* at 1232, two of FDA's proposals include the

term "skim milk" just like SMC wants. *Compare* Mayne Letter 1, *with* Compl. ¶¶ 28, 124.

Overall in *Ocheesee*, the dispute had crystallized and the facts had developed before the lawsuit was filed. Here, after SMC's discussions with Pennsylvania, FDA and SMC never had an opportunity to discuss labeling options before SMC commenced the action. Accordingly, this Court should wait until there is a truly justiciable claim (if there ever is one) that is not based on a hypothetical set of facts—*i.e.*, after SMC responds to FDA's labeling proposals and, if acceptable, applies for a permit from Pennsylvania—to ensure this is "a real and substantial controversy." *Plains*, 866 F.3d at 543 (quotations omitted).

**C. A judgment now has no utility because no one is currently forcing SMC to use an objectionable label.**

Before it was able to consider FDA's non-enforcement position, this Court previously noted that "[a] ruling in Plaintiff's favor would permit Plaintiff to proceed with its plan to sell additive-free skim milk in the Commonwealth of Pennsylvania without having to use the 'imitation' label to which it objects." Mem. Op. 14. But as a matter of "[p]ractical utility," *Plains*, 866 F.3d at 543, SMC may proceed now to do just that, even without this Court's ruling. FDA disclaimed any intent to require fortification of non-fat milk or use of the term "imitation" based on the absence of vitamins A or D. *See* Mayne Decl. ¶ 15.

Pennsylvania too said FDA's proposed labels "will allow for the labeled product to be marketed in the Commonwealth of Pennsylvania." ECF No. 37-4.

The difference between the underlying conduct in *Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2013), supports FDA's point, not SMC's. *See* SMC Opp'n 16. Orally and in writing, a state licensing board told the *Cooksey* plaintiff that he was "under investigation" for violating a statute with civil and criminal penalties, instructed him to change his advertising (and how), and reserved the right to monitor the situation even after he came into statutory compliance. *See* 721 F.3d at 231-32. In contrast, FDA repeatedly assured SMC that it does not intend to prevent SMC from distributing its non-fortified non-fat milk in Pennsylvania. *See*, *e.g.*, Mayne Decl. ¶ 13. And the agency proposed labeling options along the lines of that which SMC said it "would happily use," *see* Compl. ¶ 63, and without the term "imitation." *See* Mayne Letter 1. "[U]nless and until the defendants or their successors attempt to rescind" the representations of non-enforcement issued to SMC, this Court "should decline to provide an advisory opinion regarding the constitutionality" of the challenged regulations. *Salvation Army*, 919 F.2d at 193.

## III. Even if this suit is not entirely non-justiciable, SMC cannot otherwise retain FDA by misreading the federal regulatory regime.

Beyond the traditional justiciability analysis, SMC invokes two novel—yet incorrect—reasons for keeping FDA in this suit. First, by assuring SMC and Pennsylvania that FDA does not intend to take action to require SMC to fortify its skim milk or to label the product as "imitation," FDA has not, as SMC argues, created a *federal* premarket approval process. Second, SMC mistakes FDA for a necessary party under Federal Rule of Civil Procedure 19 when it is not.

### A. FDA does not grant or deny permits to distribute milk.

SMC claims that "ruling in the FDA's favor here would render every state food label preapproval process in the nation unconstitutional." SMC Opp'n 19. The company believes that interstate sellers of food products "must seek and obtain a determination from the FDA as to whether it will grant a dispensation to the respective state to ignore federal law." *Id.* 18. Of course, only SMC's unripe claims about the labeling of its proposed non-fortified non-fat milk product are at issue here, not amorphous claims about other states' food label review processes. Even if properly presented, this argument is inconsistent with FDA's actual role in enforcing federal law.

"The FDCA authorized the [FDA] to regulate food safety and labeling." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 331 (3d Cir. 2009); *see* 21 U.S.C.

§ 393(b)(2)(A). Unlike drug labels, "FDA does *not* preapprove food and beverage labels under its regulations." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 116 (2014) (emphasis added). Rather, FDA "relies on" post-market tools, such as "enforcement actions, warning letters, and other measures" to address any labeling that violates the FDCA. *Id.* Thus, contrary to SMC's assertion, the FDCA does not assign FDA a preapproval role—let alone "unbridled discretion"—"to grant or deny a permit" for milk labeling. SMC Opp'n 17.

### B. SMC may currently receive the relief it seeks—and sell its non-fortified non-fat milk in Pennsylvania—without any further involvement by this Court or FDA.

Finally, SMC strives to keep FDA in this lawsuit by asserting that it "would move forward against Pennsylvania" and make FDA a necessary party under Federal Rule of Civil Procedure 19. SMC Opp'n 19. This tactic is unavailing.

SMC does not explain why, if this Court finds the claims against FDA non-justiciable, the company would retain a live claim against Secretary Redding. FDA is not barring SMC from selling non-fortified non-fat milk in Pennsylvania without a label bearing the term "imitation." *See* Mem. Op. 14 (describing SMC's desired conduct). Pennsylvania stands equally ready to issue the desired permit. *See* ECF No. 37-4. Given that the Court must always consider whether it

possesses jurisdiction, *Shaffer v. GTE North, Inc.*, 284 F.3d 500, 502 (3d Cir. 2002), SMC does not appear to have a live claim against Secretary Redding.[6]

Assuming for the sake of argument that SMC has a justiciable claim against Pennsylvania but not FDA, SMC cannot retain FDA under the guise of a necessary party. *See* Fed. R. Civ. P. 19(a)(1)(A). SMC wrongly believes that Pennsylvania engages in "compulsory enforcement of a federal law." SMC Opp'n 20. SMC cites no provision of the FDCA actually imposing a compulsory enforcement obligation on Pennsylvania authorities. Nor could it. *See Printz v. United States*, 521 U.S. 898, 933 (1997) ("The Federal Government may not compel the States to enact or administer a federal regulatory program.") (quotations omitted).

"[T]he United States has developed a dual system of food . . . regulation," in which federal and state law may regulate aspects of the same food. *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 619 (4th Cir. 2015). Under its traditional police powers as a sovereign state, *see Fla. Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963), Pennsylvania also regulates food safety and labeling under state law. Pennsylvania enacted the Pennsylvania Food Safety Act,

---

[6] SMC attempts to resuscitate its mootness argument, *see* SMC Opp'n 20, but as this Court recognized, its challenge to "the constitutionality of a policy that it claims is chilling its protected speech" is properly viewed through the lens of standing and ripeness. Mem. Op. 12 n.8; *see also* ECF No. 28, at 14-18 (discussing inapplicability of mootness).

through which it adopted all federal food safety and labeling regulations "as regulations in this Commonwealth." 3 Pa. Cons. Stat. §§ 5721, 5733(f). Specific to milk and unlike federal law, Pennsylvania also established a regime under which those wishing to sell milk must receive permits and submit labeling for preapproval. *See* 7 Pa. Code §§ 59a.12, 59a.14.

To the extent that Pennsylvania was unclear about FDA's intentions regarding the application of federal law to SMC's proposed product, FDA has resolved any such uncertainty. If SMC alleges any continuing objection by Secretary Redding to SMC's product, any injury due to SMC's failure to secure the requisite permits or labeling approval would occur as a matter of state law. Accordingly, complete relief in the form of permit authorization and labeling approval "can be awarded without [FDA's] presence," and the agency is not a necessary party. *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1258 n.19 (3d Cir. 1993).

## Conclusion

The Federal Defendants respectfully request that this Court dismiss SMC's Complaint.

Respectfully submitted,

Of Counsel:

DAVE J. FREED
United States Attorney

ROBERT P. CHARROW
General Counsel

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
U.S. Dept. of Health & Human Services

ANNAMARIE KEMPIC
Deputy Chief Counsel, Litigation

PAIGE H. TAYLOR
Senior Counsel
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

DAVID M. MORRELL
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director

ANDREW E. CLARK
Assistant Director

/s/ James W. Harlow
JAMES W. HARLOW
Trial Attorney
U.S. Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044-0386
Phone: (202) 514-6786
Facsimile: (202) 514-8742
James.W.Harlow@usdoj.gov
MD Bar (no numbers issued)

Date: June 21, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUTH MOUNTAIN CREAMERY, LLC, Plaintiff | : | No. 1:18-cv-00738 |
| vs. | : | (Kane, J.) |
| U.S. FOOD AND DRUG ADMINISTRATION, et al., Defendants. | : | Filed Electronically |

**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that, excluding the Table of Contents and Table of Citations, this brief contains 4837 words, and therefore complies with Local Rule 7.8(b)(2). The undersigned relied on the word count function of Microsoft Word.

/s/ James W. Harlow
JAMES W. HARLOW
Trial Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUTH MOUNTAIN CREAMERY, LLC, Plaintiff | : | No. 1:18-cv-00738 |
| | : | |
| vs. | : | (Kane, J.) |
| | : | |
| U.S. FOOD AND DRUG ADMINISTRATION, et al., Defendants. | : | Filed Electronically |
| | : | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 21, 2019, I caused to be served via ECF a true and correct copy of the foregoing document to counsel of record for all parties.

/s/ James W. Harlow
JAMES W. HARLOW
Trial Attorney